UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHRISTOPHER SPENCE,

               Petitioner,

    -against-                              1:05-CV-546
                                             (LEK)

UNITED STATES OF AMERICA,

               Respondent.

_____

### MEMORANDUM-DECISION AND ORDER[1]

Currently before the Court is a Petition for Habeas Corpus filed by Christopher Spence

("Petitioner" or "Spence"), pursuant to 28 U.S.C. § 2255. Section 2255 Motion (Dkt. No. 1).

After review of the record and the relevant law, and for the reasons that follow, the Petition is

denied.

### I. PROCEDURAL BACKGROUND

Petitioner, also known as Michael Brown and Harrison Wright, an alien, was deported

and removed from the United States after his conviction for commission of an aggravated felony

offense. Specifically, Spence was convicted of attempted robbery in the first degree, attempted

robbery in the second degree, and assault in the second degree on December 19, 1994, in Bronx

County, New York. Transcript of Plea Allocution (Case No. 1:03-CR-0122, Dkt. No. 20) at 12.

He had also been convicted of criminal possession of marijuana in the first degree on January 25,

---

[1] For printed publication by the Federal Reporters.

1989, in Queens County, New York.  Id.

Petitioner was deported and removed from the United States on May 6, 1998.  He was thereafter found in the United States on June 20, 2001, without having obtained the prior express consent of the Attorney General of the United States, which was required  to reapply for admission into the United States.  8 U.S.C. § 1326(a) & (b)(2).  On March 14, 2003, the Grand Jury in the Northern District of New York returned a one-count indictment against Spence charging him with reentry after deportation following conviction for commission of an aggravated felony offense in violation of 8 U.S.C. § 1326(a) & (b)(2).   Indictment (Case No. 1:03-CR-0122, Dkt. No. 6).  On July 10, 2003, Spence pled guilty to the indictment, in the absence of a plea agreement, before the undersigned.  On November 4, 2003, Spence was sentenced to seventy-six months imprisonment, three years of supervised release, and a $100 special assessment.  Sentencing (Case No. 1:03-CR-0122, Dkt. No. 16).  This judgment was entered on December 1, 2003.  Judgment (Case No. 1:03-CR-0122, Dkt. No.18).  Defense counsel thereafter filed a notice of appeal, an Anders Brief and Appendix, and a Motion to Withdraw as Counsel, while the United States responded with a Motion for Summary Affirmance.  Mandate (Case No. 1:03-CR-0122, Dkt. No. 25).  The United States Court of Appeals for the Second Circuit granted Spence leave to file a *pro se* brief, which he filed in addition to a request for appointment of counsel.  Id.

Spence made three main arguments on appeal.  First, he argued that this Court improperly increased his base offense level by 16 points at sentencing.  Second, he claimed that he was improperly deported in 1998.  Third, he argued that this Court  improperly denied his motion for a downward departure.  Mandate (Case No. 1:03-CR-0122, Dkt. No. 25).

2

On May 28, 2004, the Second Circuit granted defense counsel's Anders motion and the Government's motion for summary affirmance, and also affirmed the judgment of this Court. The Court of Appeals found that in making his first argument, Spence was relying on an improper version of the Sentencing Guidelines, which "predates not only his sentencing date (November 2003), but also the date on which he committed his present crime (June 2001)." Id.

In reference to Petitioner's second argument challenging the deportation proceedings in 1998, the Court found that Spence did not provide a basis on which to collaterally attack his removal proceeding. "Even assuming that [Spence's] prior deportation was procedurally deficient in some manner, he must demonstrate that the procedural infirmity deprived him of judicial review and rendered the proceeding fundamentally unfair" under 8 U.S.C. § 1326(d). Id. He had validly waived his right to appeal the Immigration Judge's removal order and thus was conclusively presumed to be deportable under 8 U.S.C. § 1228(c). Id.

In reference to Petitioner's third argument challenging this Court's denial of his motion for a downward departure, the Court of Appeals recognized that the decision of the district court is generally not reviewable on appeal. United States v. Aponte, 235 F.3d 802, 803 (2d Cir. 2000). The Court further found that none of the exceptions to that rule were applicable here. Mandate (Case No. 1:03-CR-0122, Dkt. No. 25). Furthermore, the Court of Appeals found that Spence's appeal presented "no non-frivolous issues" and thus, denied his request for appointment of counsel as moot. Id. Following this decision, Spence filed a motion to recall the Mandate and for leave to file a motion for rehearing en banc, which was denied on September 19, 2004. Gov't Opp. to 2255 Motion (Case No. 1:05-CV-546, Dkt. No. 5) at 3; Section 2255 Motion (Case No. 1:05-CV-546, Dkt. No. 1) at 13.

3

Spence then proceeded *pro se* to file a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. A one year period of limitations applies to such motion and runs from the date of the final judgment of conviction. 28 U.S.C. § 2255. Here, the present habeas motion is timely because it was filed on May 4, 2005, which was within one year of the final judgment.

## II. DISCUSSION

Under 28 U.S.C. § 2255, a prisoner in custody under sentence by a court may move the court that imposed the sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255. The prisoner must satisfy one of the following grounds: (1) that the sentence imposed was in violation of the Constitution or laws of the United States, (2) that the court was without jurisdiction to impose the sentence, (3) that the sentence was in excess of the maximum authorized by law, or (4) that the sentence is subject to collateral attack. Id. Spence has not successfully proved any of these grounds.

The sentence imposed was not in violation of the Constitution or laws of the United States; this Court, within the Northern District of New York properly exercised jurisdiction; the sentence was not beyond the maximum time authorized by law; and this sentence is not subject to collateral attack. "[A] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984). However, the validity of a guilty plea can be called into question if the plea was not voluntary and intelligent, or if prior to pleading guilty the prisoner received ineffective assistance of counsel. Id. at 508-09. Here, Spence argues both that his plea was not voluntary and intelligent and that he received ineffective assistance of counsel because defense counsel did not investigate and failed to challenge his prior deportation, the indictment, and the

4

plea proceeding.  Section 2255 Motion (Case No. 1:05-CV-546, Dkt. No. 1) at 8-9.  Spence further argues that this Court erred in accepting his guilty plea because during his plea colloquy he allegedly informed the Court that his underlying deportation was unlawful.  Id. at 9-10.

**A.  Spence's Removal Was Not Unlawful**

Under 8 U.S.C. § 1326(a), it is a crime for a deported or removed alien to enter, attempt to enter, or to be found in the United States.  8 U.S.C. § 1326(a).  An alien is able to defend against this charge by challenging the validity of the deportation order upon which the charge is based.  Spence attempts to make this argument with no success.

In a criminal proceeding for illegal reentry, an alien may not challenge the validity of the deportation unless the alien demonstrates three things. The alien must demonstrate that: (1) he has "exhausted any administrative remedies that may have been available to seek relief against the order," (2) that "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review", and (3) that "the entry of the order was fundamentally unfair."  8 U.S.C. § 1326(d); United States v. Copeland, 376 F.3d 61, 66 (2d Cir. 2004).  These three prongs are "conjunctive and thus [Petitioner] must establish all three" to successfully challenge the removal order.  United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2001).  Here, Spence is unable to meet the first prong of the test set forth in United States v. Copeland.  He did not exhaust all available administrative remedies that may have been available  in order to seek relief against the order because he waived his right to appeal.

Under the first part of the test, it is possible for this exhaustion requirement to be excused if the waiver of the right to appeal was both unknowing and unintelligent.  United States v. Calderon, 391 F.3d 370, 371 (2d Cir. 2004).  Spence argues, "[a]t no time during this

'proceeding' was the defendant ever advised of his right to appeal . . . ."  Section 2255 Motion (Case No.1:05-CV-546, Dkt. No. 1) at 17.  This argument is false.  Spence also argues that INS agents "tricked him into waiving his constitutional and/or procedural right to a full deportation proceeding", and that the INS agents "set up a mock telephonic hook-up."  Id. at 19.  This argument is also false. On February 13, 1998, an Immigration Judge in Chicago conducted a telephonic removal proceeding.  Tape of Removal Hearing.[2]  Spence appeared without an attorney and waived his right to counsel.  Id.  The Immigration Judge specifically informed Spence that he had a right to appeal to the Board of Immigration Appeals and further notified him of the appeal process. Id.  Spence waived this right.  Id.  Spence was informed that he was permanently barred from the United States and that he would face up to twenty years in prison if he returned without permission.  Id.  Spence made comments such as, "I want to get this over with," and "I just want to get out of here.  I want to go to Jamaica . . ." during the removal proceeding.  Id.  Throughout the entire proceeding, Spence continued to express his desire to go back to Jamaica.  Id.

### 1.  Section 212(c) Discretionary Relief

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which took effect on April 24, 1996.  Specifically, § 440(d) of the AEDPA, "greatly expanded the range of crimes that rendered aliens statutorily ineligible for § 212(c) relief."  Henderson v. I.N.S., 157 F.3d 106, 109 (2d Cir. 1998).  In other words,

in § 440(d) of AEDPA, Congress identified a broad set of offenses for which convictions

---

[2] An audio recording of the February 13, 1998 removal hearing was submitted with the Government's memorandum of law and is now on file with the Court.  The recording has been reviewed and considered by this Court.

would preclude. . . relief. . . . And. . . that same year, Congress passed [Illegal Immigration Reform and Immigrant Responsibility Act of 1996]. That statute, *inter alia*, repealed § 212(c), . . . and replaced it with a new section that gives the Attorney General the authority to cancel removal for a narrow class of inadmissible or deportable aliens.... So narrowed, that class does not include anyone previously "convicted of any aggravated felony."

I.N.S. v. St. Cyr, 533 U.S. 289, 297 (2001); 8 U.S.C. § 1229b(3)(a). However, the Supreme Court held that "§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." St. Cyr., 533 U.S. at 326.

Spence argues that because he was not informed of his right to apply for discretionary relief under the former Section 212(c) of the Immigration and Naturalization Act, he is excused from failing to exhaust his administrative remedies. See Section 2255 Motion (Case No. 1:05-CV-546, Dkt. No. 1) at 20. "[A] failure to advise a potential deportee of a right to seek Section 212(c) relief can, if prejudicial, be fundamentally unfair within the meaning of Section 1326(d)(3)." Copeland, 376 F.3d at 71. Spence would need to prove that he was prejudiced by the fundamental error of the IJ's failing to advise him of his right to seek § 212(c) relief. An alien is prejudiced by a fundamental procedural error "where there is a reasonable probability that, but for the IJ's unprofessional errors, the alien would have been granted Section 212(c) relief. " Id. at 73. A number of "adverse factors" are balanced against "the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country." United States v. Sosa, 387 F.3d 131, 138 (2d Cir. 2004) (quoting Matter of Marin, 16 I. & N. Dec. 581, 584 (BIA 1978)). See also Lovell v. I.N.S., 52 F.3d 458, 461 (2d Cir. 1995). Such adverse factors include: "the presence of additional immigration law violations, the existence of a criminal record and its nature, recency and

seriousness, and the presence of other evidence indicative of an alien's bad character or undesirability as a permanent resident." Lovell, 52 F.3d at 461. Favorable considerations include: "family ties within this country, residence of long duration in this country, . . . evidence attesting to good character, and, in the case of one convicted of criminal conduct, proof of genuine rehabilitation." Id.

The former § 212(c) has been interpreted to "authorize any permanent resident alien with 'a lawful unrelinquished domicile of seven consecutive years' to apply for a discretionary waiver from deportation." St. Cyr., 533 U.S. at 295. If such relief is granted, then the alien is able to remain a permanent resident and the deportation proceeding is terminated. Id. at 295.

Here, Spence was ineligible for § 212(c) relief because he was not lawfully admitted for permanent residence. LeRoy F. Tario, a group supervisor from U.S. Immigration and Customs Enforcement, certified that "after a diligent search was performed" there was "no record in the database systems indicating that the subject was admitted to the United States at Miami, Florida, on or about December 1984 as a lawful permanent resident." Affidavit of LeRoy F. Tario (Case No.1:05-CV-546, Dkt. No. 9). Furthermore, Tario certified that "[t]here is no documentation . . . that shows the subject was lawfully admitted to the United States or that the subject ever possessed lawful permanent resident status." Id. Thus, since he was ineligible for such relief, the IJ's failure to advise him of his right to seek discretionary relief did not prejudice Spence at all.

Even if Spence could qualify for § 212(c) relief, he was not prejudiced by the IJ's failure to inform him of his right to apply for discretionary relief. Given the heavy weight of the adverse factors associated with Spence's situation balanced against those factors favorable to Spence, a

8

reasonable probability does not exist in Spence's favor to show that he would have been granted § 212(c) relief.  Spence was convicted of attempted robbery in the first degree, attempted robbery in the second degree, assault in the second degree, and criminal possession of marijuana in the first degree all within a six year period.  Transcript of Plea Allocution (Case No. 1:03-CR-0122, Dkt. No. 20) at 12.  Furthermore, during his removal proceeding he was informed by the IJ that he could only reenter the United States by obtaining the prior express consent of the Attorney General.  Tape of Removal Proceeding.  He did not obtain such consent, so he was then charged with illegal reentry.  Indictment (Case No. 1:03-CR-0122, Dkt. No. 6).  Upon reviewing the tape of the removal proceeding, Spence made it very clear to the IJ that he wanted to go back to Jamaica.  See Tape of Removal Proceeding.

Therefore, Spence's waiver was both knowing and intentional, which is evidenced by the telephonic hearing.  He is unable to satisfy the statutory requirements set forth in § 1326(d) and, thus, is unable to mount a successful challenge to his deportation hearing.

**B.  Defense Counsel Did Not Render Ineffective Assistance of Counsel**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const., amend. VI.  To establish a violation of the right to the effective assistance of counsel, a habeas petitioner must show that: (1) "counsel's performance was deficient" by making "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) that petitioner suffered prejudice in such a way that if it were not for counsel's deficient performance, the outcome of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-90 (1984).  This is a very high standard for Petitioner to

overcome.  Id. at 690.  Spence alleges ineffective assistance of counsel in a number of instances; none of these instances constitute a violation of Petitioner's Sixth Amendment right to effective assistance of counsel.

### 1. Defense Counsel Was Not Ineffective for Failing to Challenge the Prior Deportation Hearing, the Indictment, and Plea Proceeding

Petitioner is unable to satisfy either prong of the Strickland test in alleging ineffective assistance of counsel.  Defense counsel did not make an error for not challenging Spence's prior deportation hearing because Spence could not successfully challenge the hearing under 8 U.S.C. § 1326(d) and Copeland.   Spence waived his right to appeal and therefore, could not satisfy the first requirement.  He makes a number of arguments concerning the deportation hearing, all of which lack support.   Also, Spence argues that defense counsel failed to provide him with effective assistance of counsel by failing to appeal the indictment or the plea allocution.  Once again, these arguments lack support.  The transcript from the plea allocution establishes that Spence received a standard, comprehensive plea hearing.  Transcript of Plea Allocution (Case No. 1:03-CR-0122, Dkt. No. 20).  Defense counsel did not render ineffective assistance.

Acting in the best interest of the client does not mean that an attorney must bring any and all claims that the client wishes.  Rather, these claims must be based on legal principles.  Hence, at times an attorney may be split between acting in accordance with the client's wishes and abiding by rules set forth in the New York Code of Professional Responsibility.  See N.Y. COMP. CODES R. & REG. tit. 22, § 1200.33 [DR 7-102].  Here, Spence argues that he was deprived of effective assistance because his attorney would not challenge the prior deportation hearing, the indictment, and plea proceeding.  As discussed above and below, Spence did not have legal

support for his claims. Thus, an attorney who abides by the rules of professional responsibility

does not render ineffective assistance when failing or refusing to appeal claims that lack legal

support.

### 2. Defense Counsel Did Not Provide Petitioner with Ineffective Assistance of Counsel During Plea

Spence argues that the lack of representation by defense counsel was equivalent to "a

total abandonment of the defendant." Section 2255 Motion (Case No. 1:05-CV-546, Dkt. No. 1)

at 9. This allegation lacks support. The following is a synopsis of Spence's guilty plea on July

10, 2003.

> THE COURT: I understand there's a lot of law . . . but we want to make sure you do understand everything and [your attorney] is here, of course, to answer any questions. If there's anything you want to ask or that [you] don't understand, be sure to take the time to ask [your attorney]. Are you okay for now?
> THE DEFENDANT: Yes, sir.
> THE COURT: Okay. Has your attorney, Mr. Sprotbery, gone over the indictment with you?
> THE DEFENDANT: Yes, sir.
> THE COURT: And have you had a chance to read the charges?
> THE DEFENDANT: Yes.
> THE COURT: And he explained them to you?
> THE DEFENDANT: Yes, sir.
> THE COURT: And you understand them?
> THE DEFENDANT: Yes.

Transcript of Plea Allocution (Case No. 1:03-CR-0122, Dkt. No. 20) at 6-7. Spence's testimony

during the plea allocution contradicts his allegations in his Section 2255 motion. The record

shows that defense counsel went over the indictment with Spence and explained the charges to

him.

Spence further argues that his defense attorney failed to provide effective assistance,

which led to a violation of his constitutional and procedural rights to a fair trial and a fair

sentencing determination.  Section 2255 Motion (Case No.1:05-CV-546, Dkt. No. 1) at 8.  This

argument lacks support, as illustrated by the following from the plea colloquy:

> THE COURT: . . . . Now, did you speak to Mr. Spotbery about pleading guilty?
> THE DEFENDANT**:** Yes, sir.
> THE COURT: And did you speak to him about the consequences of pleading guilty?
> THE DEFENDANT: Yeah, he explain[ed] it.
> THE COURT: And did he fully discuss the charges with you?
> THE DEFENDANT: Yes.
> THE COURT: And did you discuss with Mr. Spotbery your chances of success or failure
> should you go to trial and any strategy you might use, any defenses you might put
> forward?  Did you discuss that with him, too?
> THE DEFENDANT: Yes, sir.

Transcript of Plea Allocution (Case No. 1:03-CR-0122, Dkt. No. 20) at 9.  Spence admitted that

his attorney did discuss the consequences of pleading guilty, the charges against him, the

successes and failures of going to trial, and possible defenses.  But in his 2255 Motion, Spence

argues that his "counsel . . . intentionally misled him, (or failed to fully advise him), as to all

essential facts necessary for him to make an informed decision to forego his right to trial" and

that defense counsel was  "willfully lying" to the Court when telling the Court that he had

advised the defendant that "no viable defense strategy existed."  Section 2255 Motion (Case No.

1:05-CV-546, Dkt. No. 1) at 28-29.  After reviewing Spence's statements in the plea transcript,

the Court finds that Spence's arguments in the present motion lack any support.


### C.  The District Court Validly Accepted Spence's Guilty Plea

Spence's guilty plea was voluntary and intelligent, and thus this Court validly accepted

said plea.

Spence argues that "there was a great deal of confusion surrounding the defendant's

guilty plea proceeding . . . and the court should certainly have been alerted to the fact that he

lacked a full understanding of all that was happening to him in this process." <u>Id.</u> at 26-27. The

following occurred during the plea proceeding:

> THE COURT: Mr. Spence, you discussed with your attorney and you understand the
> implications that you may be required again to be deported from this country on this plea?
>
> THE DEFENDANT: Sir, that's why I'm in this court, because I did not understand the
> deportation papers goin' back to Jamaica.  Because the first time I sign[ed] the removal
> papers, I wasn't in front of a Judge and I never saw anybody. . . .
>
> THE COURT: The main thing I want to make sure here is that you understand in this plea
> and your desire to plead guilty in this case that there are also implications of deportation
> and you may well be deported following this proceeding.  I don't mean this particular
> proceeding, but in general.  Did you discuss that with him, [defense counsel]?
>
> > (Discussion between defendant and counsel.)
>
> THE DEFENDANT: I understand.  But I didn't want to go back to Jamaica, that's why
> I'm in this court right now, your Honor.  If I had signed the paper, I would be deported
> there.
>
> THE COURT:   I want to make sure you understand and your attorney discussed with
> you the fact that by taking your plea here today and by pleading guilty, it may well be and,
> in fact, may be mandatory that you be deported . . . . Was that explained to him, [defense
> counsel]?
>
> [DEFENSE COUNSEL:] Yes, your Honor, we discussed it.
>
> THE COURT: Right.  And you understand that, Mr. Spence?
>
> THE DEFENDANT: Yes.

Transcript of Plea Allocution (Case No. 1:03-CR-0122, Dkt. No. 20) at 13-15.  The fact remains

that Spence openly pled guilty to Count I of the indictment charging him with a violation of  8

U.S.C. § 1326(a) & (b)(2).  He was advised of his rights, had the opportunity to speak with

defense counsel, and was even warned of the consequences of pleading guilty by the Court.  <u>Id.</u>

The guilty plea was sufficient, and this Court did not fail to make a satisfactory inquiry as to

whether or not there was a true factual basis for the plea.  Furthermore, Spence was given ample

opportunity to speak with defense counsel during the plea colloquy, and the Court urged him not to plead unless he was in fact guilty. Id. at 9-10.  Spence pled guilty.  Id. at 10.

After reviewing the prior removal proceeding, the statements Spence made to the Court during his plea allocution are untrue.  Spence did have a lawful proceeding with an immigration judge, who explained the removal consequences to him.  Tape of Removal Hearing.  Throughout the entire proceeding, Spence indicated that he understood.  Id.  Furthermore, at no time during his telephonic proceeding did Spence raise any of his allegations that he raises now about being tricked by immigration agents.  Id.  Spence stated to this Court during his plea colloquy that he "didn't want to go back to Jamaica".  Transcript of Plea Allocution (Case No. 1:03-CR-0122, Dkt. No. 20) at 14.  However, during Spence's removal proceeding, he stated numerous times that he wanted to return to Jamaica.  Tape of Removal Hearing.

### D.  Blakely/Booker Challenge

Each and every criminal defendant reserves the right "to demand that a jury find him guilty of all the elements of the crime with which he is charged."  United States v. Gaudin, 515 U.S. 506 (1995).  This fundamental principle also specifically applies to sentencing procedures. In Apprendi v. New Jersey, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. 466, 490 (2000). Furthermore, just recently in United States v. Booker, the Supreme Court reaffirmed the holding in Apprendi and Blakely v. Washington, 542 U.S. 296 (2004), based on principles of fairness and reliability.  Citing Blakely, the Supreme Court held that the Sixth Amendment is

violated "by the imposition of an enhanced sentence under the United States Sentencing Guidelines based on the sentencing judge's determination of fact (other than a prior conviction) that was not found by the jury or admitted by the defendant." United States v. Booker, 543 U.S. 220, 224, 245 (2005). Furthermore, the Second Circuit has recently held that Booker "does not apply retroactively to cases on collateral review . . . ." Guzman v. United States, 404 F.3d 139, 140 (2d Cir. 2005).

Here, Spence is unable to prevail under the recent Supreme Court holdings in Blakely and Booker for two main reasons. First, Spence has no relief under Booker because his sentence was imposed on November 4, 2003, and Booker was decided on January 12, 2005. Since Booker does not apply retroactively, it does not apply to the consideration of the present matter.

Second, even if Booker did apply retroactively, Spence would be unable to prevail. This Court did not rely on our own findings of fact, but rather strictly considered Spence's admission of his prior convictions and his plea of guilty to illegal reentry. Spence argues that during the indictment and plea allocution, the Government did not "specifically detail in it's factual basis, (or the defendant expressly admit to), the nature and/or circumstances of the alleged prior aggravated felony offense." Section 2255 Motion (Case No. 1:05-CV-546, Dkt. No. 1) at 44-45. This contention is not true. The defendant did, in fact, admit to the details surrounding his prior aggravated felony offenses during the plea allocution, Transcript of Plea Allocution (Case No.1:03-CR-0122, Dkt. No. 20) at 12-13, and Count One of the Indictment also made reference to his prior conviction for "commission of an aggravated felony offense", Indictment (Case No. 1:03-CR-0122, Dkt. No. 6). Therefore, Spence did not suffer a violation of his rights under the holdings set forth in Booker and Blakely.

15

### III.   CONCLUSION

Therefore, for the reasons stated above, it is hereby:

**ORDERED,** that Petitioner's Section 2255 Motion (Case No. 1:05-CV-546, Dkt. No. 1)

is **DENIED**; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Order by regular mail

upon the parties to this action.

**IT IS SO ORDERED.**


DATED:        May 12, 2006
              Albany, New York


                              Lawrence E. Kahn
                              U.S. District Judge